### ASCENSION ARIAS v. THE STATE.

No. 3443.  Decided February 24, 1915.

1.—Occupation—Intoxicating Liquors—Local Option—Newly Discovered Evidence—Affidavit—Rule Stated.

It has always been the rule of this court that an application for a new trial to procure newly discovered testimony must be sworn to, and must be accompanied by the affidavit of the newly discovered witness or witnesses, or cause be shown why not so accompanied. Following Love v. State, 3 Texas Crim. App., 501, and other cases.

2.—Same—Case Stated—Newly Discovered Evidence.

Where the motion for new trial on the ground of newly discovered evidence was not supported by proper affidavit by the alleged absent witnesses or either of them that they would testify as alleged in the affidavit, and no reason is shown why they did not do so, there was no error in overruling the motion; besides, it appeared from the record that the defendant had ample time to have secured the absent witnesses if they would so testify.

3.—Same—Sufficiency of the Evidence.

Where, upon trial of unlawfully pursuing the occupation of selling intoxicating liquors in local option territory, the evidence was sufficient to support the verdict, there was no reversible error.

Appeal from the District Court of Medina. Tried below before the Hon. R. H. Burney.

Appeal from a conviction of pursuing the occupation of selling intoxicating liquors, etc.; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jno. T. Briscoe* and *V. H. Blocker,* for appellant.—On question of newly discovered evidence: Templeton v. State, 5 Texas Crim. App., 398; Magruder v. State, 35 Texas Crim. Rep., 214; Trevino v. State, 38 id., 64; Mitchell v. State, 38 id., 170.

On question of insufficiency of evidence: Price v. State, 36 Texas Crim. Rep., 143.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was convicted of pursuing the business of selling intoxicating liquor in prohibition territory.

There are but two questions presented in the motion for new trial, one alleging newly discovered testimony and the other claiming the testimony is insufficient to sustain the verdict.

As to the newly discovered testimony, Joe Cude testified on the trial that he saw appellant make sales of whisky to F. A. Schott; that he was standing by the wall and looked through a crack in the wall. Appellant alleges that he did not know Cude would so testify, and if given a new trial he can prove by several witnesses there is no crack in the wall. He does not attach the affidavit of either of the witnesses to the motion, stating they would so testify, and states no reason why he did not do so. It has always been the rule in this court that an application for a new trial to procure newly discovered testimony must be sworn to, and must be accompanied by the affidavit of the newly discovered witness or witnesses, or cause be shown why not so accompanied. Love v. State, 3 Texas Crim. App., 401; Cotton v. State, 4 Texas, 260; Tuttle v. State, 6 Texas Crim. App., 556. In addition to this, if we could waive the fact of the affidavit of the witnesses that they would so testify in contesting the motion, the district attorney shows the following facts:

"That the defendant Ascension Arias, had an examining trial before Hon. D. S. Robertson, justice of the peace of precinct No. 5, of Medina County, Texas, on the charge contained in the indictment herein, at which examining trial he was bound over to await the action of the District Court of Medina County, Texas, which examining trial was had on the 19th day of May, A. D. 1913; that at said examining trial the witness Joe Cude testified that on or about May 3, 1913, and on or about May 7, 1913, he looked through a crack in the wall of the building in which the defendant conducted his business, and on each occasion saw the defendant, Ascension Arias, sell to F. A. Schott whisky. That at said examining trial the defendant, Ascension Arias, and his counsel, Hon. John T. Briscoe, were present and heard said witness Joe Cude testify that he looked through a crack in the wall of the building occupied by defendant on said dates and on each occasion saw defendant sell and deliver whisky to F. A. Schott.

"That said witness Joe Cude testified to no other facts at this trial except what he testified to at said examining trial."

It is thus seen that appellant heard the witness so testify at the examining trial on May 19, 1913, while his trial was not held until November 10, 1914, more than one year and six months thereafter, and he had ample time to secure the witnesses if they would so testify.

As to the other ground, the alleged insufficiency of the testimony, it is true that F. A. Schott testified that he never bought any whisky

from appellant, but on cross-examination he testified: "I got some whisky at the place of defendant. I got it there more than once. I found some once in a scrap pile where I got some iron. Mr. Burns give me a right to get them railroad tools and some scrap iron, and in the box I found some whisky, well I knowed just like anybody else whenever you get anything see any whisky and a man cares for it he will pretty near come and take some, I took it. I did not leave any money there at that time. Then in the evening I needed another piece and I went back there and the box still set there and I knowed whoever brought that there would like to have some money in it and I just brought the money then and taken the two bottles whisky, but whose it was I don't know. I don't know anything about that. Afterwards I never went back to this any more. I didn't find the box any more, I found some in a morale, that was in a different place, that was right on the side of the hill, it stood right like this about that far the head was out and I took a dram out of it and I thought I just as well, I said if the darn fool leaves it in that morrale I just as leave put it in my morral. I did not leave any money. I remember the examining trial of the defendant last May, my testimony is written down and signed by me, the testimony was given before Mr. Robertson, the justice of the peace. As to the correctness of the following statement purporting to be my testimony given at the examining trial of the defendant 'My name is F. A. Schott, I live at Devine, Texas. I know Ascension Arias. I found whisky several times on Ascension's premises, and I know it had been left there for purpose of sale. I took some and left money in its place,' that is not correct, I don't know really if I stated it was left there for sale, I don't think I did. He made a mistake putting it down. I couldn't say he left it for sale, because I didn't know. I think that part where the statement says it was left there for sale is a mistake; the other part where I found the whisky is correct and that I left money in its place. I went for more whisky and I noticed the money had been taken."

Under such circumstances it is not surprising that the jury believed the testimony of Joe Cude when he testified he saw appellant sell whisky on two occasions to F. A. Schott. And on the issue of proving the business Tillman Jenkins testified: "I have lived at Devine, I guess, about thirteen years. I work in Williamson's gin there. I have drank whisky there sometimes. I drink it when I can get it. I know this defendant, Ascension Arias, have known him a good while. I can't say how many years, I guess about five or six years, something like that. As to whether I ever bought anything from the defendant, I want to be square, I gave him money several times and got whisky, just like I told you before. I couldn't tell you when it was, you know it's been a good while ago. I guess it had been over a year ago. I couldn't hardly tell you because I haven't kept any account of it. I did not testify at Devine in the examining trial, but I testified here in Hondo before the grand jury, that was a year ago. It was after I got the whisky from the defendant that I testified before the grand jury. As

to how many times I got whisky from the defendant, I couldn't tell you, it has been a dozen times or more, it is just about that way, a dozen times or more. I couldn't swear how many times, it has been several times, you know. I never got any whisky from him during the last year, this year. As to how I got the whisky, he would bring it to me at Devine—as to just where, standing around the streets there, most anywhere, in different places. He would go and get it and bring it to me, I know where he had his fruit stand in Devine. After he left the fruit stand he would bring the whisky to me, sometimes I would be on the railroad, sometimes in town, and once down there close to Mr. Adams, you know. I gave him the money and he would walk away and after a while he would bring back the whisky to me. He did that a dozen times or more."

The evidence supports the verdict, and the judgment is affirmed.

*Affirmed.*